## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **DAVID BROCK,** | **)** | |
| *Plaintiff,* | **)** | |
| | **)** | |
| **v.** | **)** | |
| | **)** | |
| **HAMBLEN COUNTY,** | **)** | |
| **SHERIFF ESCO JARNIGAN,** | **)** | |
| **TERESA LAWS, HAMBLEN** | **)** | |
| **COUNTY JAIL ADMINISTRATOR,** | **)** | CASE NO.: _____ |
| **JAIL OFFICER(S)** *RESPONSIBLE* | **)** | |
| *FOR HOUSING PLAINTIFF***,** | **)** | **JURY TRIAL DEMANDED** |
| *INCLUDING* **BRADLEY GILMER,** | **)** | |
| **CORRECTHEALTH** | **)** | |
| **HAMBLEN, LLC.,** | **)** | |
| **MICHAEL HARVEY,** | **)** | |
| **MARTY HARVEY,** | **)** | |
| **BRANDON LAWSON,** | **)** | |
| **HARLEY HUMPHREY, and** | **)** | |
| **MICHAEL TURNER,** | **)** | |
| *Defendants.* | **)** | |

### COMPLAINT FOR DAMAGES

**COMES NOW**, the Plaintiff David Brock, by and through his undersigned attorneys and files this his complaint alleging claims pursuant to 42 U.S.C. § 1983 and §1988; negligence and assault against Defendants as follows:

### I.    PARTIES

### PLAINTIFF

1.    At all times material hereto, Plaintiff was a pre-trial detainee housed at the Hamblen County Jail.

- 1 -

## **DEFENDANTS**

2.    At all times material hereto, Hamblen County owned the Hamblen County Jail located at 510 Alison Street, Morristown, Hamblen County, Tennessee. Hamblen County is a political governmental entity in the State of Tennessee.

3.    At all times material hereto, Sheriff Esco Jarnigan was the duly elected Sheriff of Hamblen County acting under color of law who was statutorily responsible for the operation of the Hamblen County Jail; for the hiring, firing, training and supervision of deputies to man the Jail; and for the safety of persons housed therein against their will. He owed a duty to Plaintiff under the Fourteenth Amendment to take the necessary actions to ensure that Plaintiff's constitutional rights were upheld while he was in the Hamblen County Jail.

4.    Sheriff Jarnigan appointed Teresa Laws to be the head jailer and other members of the Sheriff's Department were assigned to work at the Hamblen County Jail under Laws, including the officers who booked Plaintiff into the Jail and who were responsible for Plaintiff's housing assignment in the West Block.

5.    Sheriff Jarnigan and Teresa Laws knew that for years the Tennessee Corrections Institute had issued annual reports to them and Hamblen County advising that the Hamblen County Jail failed to meet the minimum standards set forth by the Tennessee Corrections Institute, including that the Jail suffered from chronic, persistent overcrowding and understaffing. These conditions, well known to Hamblen County, Sheriff Jarnigan and Teresa Laws, prevented inmates from being properly classified and housed so as to the reduce the likelihood of violence against other inmates and housed accordingly. This

condition continued to exist through July 15, 2018, the date on which Plaintiff's assault occurred.

6.     At all times material hereto, Defendants knew that they were housing dangerously violent inmates with other non-violent inmates and thus creating the potential for violence upon the weaker, non-violent inmates. In fact, Defendants had been sued previously in this Court over facts remarkably similar to this case. *See*, *e.g.*, *Garcia v. Hamblen County, et al.*, 2:16-cv-00036 PLR MCLC; *Sexton v. Hamblen County et al.*, No. 2:16-cv-00046.

7.     At all times material hereto, Defendant Laws had the authority and ability to classify inmates according to their propensity for violence and to instruct booking officers and corrections officers to segregate inmates according to their propensity to violence and other risk-factors for inmate-on-inmate violence, such as whether a detainee has served as an informant working with law enforcement. On information and belief, Defendant Theresa Laws knew that jail officers were intentionally placing non-violent offenders and informants with violent offenders and/or inmates likely to retaliate against informants, notwithstanding the known risk of harm to these non-violent offenders and informants. T.C.A. § 41-4-103.

8.     At all times material hereto, the Jail Officers—Bradley Gilmer and one Unknown Officer—who spoke with Plaintiff on July 15, 2018, specifically knew Plaintiff was an informant and that housing him in a particular area of the Jail known as the "West Block" with violent inmates would result in the increased likelihood that Plaintiff would suffer violence at the hands of his cell mates. Yet, when Plaintiff complained, those officers advised Plaintiff that they did not care, and that Plaintiff would remain within the West

Block by order of the "Captain," presumably, Captain and Jail Administrator Theresa Laws.

9.     At all times material hereto Sherriff Jarnigan refused to implement a classification system so as to prevent known violent offenders and informants from being housed with non-violent offenders despite his actual knowledge that the failure to house inmates according to a proper classification system would, and had, resulted in physical harm being inflicted on weaker, non-violent inmates and known informants by habitually violent offenders.

10.    Defendant Jarnigan is not liable for the non-negligent acts or failures to act of his deputies. However, the County is legally liable for the non-negligent acts or failures to act of Hamblen County deputies pursuant to T.C.A. § 8-8-302. Hamblen County is legally liable for the negligence of persons employed by the County, including Jarnigan, Laws, and any other employee at the Jail pursuant to T.C.A. § 29-20-205. Hamblen County has waived its immunity pursuant to T.C.A. § 8-8-302 and T.C.A. § 29-20-205. Furthermore, Defendant Jarnigan is civilly responsible to the Plaintiff for the acts and failures to act of his Jailers, including Defendant Teresa Laws. In addition, Defendant Sheriff Jarnigan is civilly liable for the actions of his Jailers/officers performing the tasks and duties that Defendant Jarnigan was statutorily responsible for performing. *See* T.C.A. § 41-4-101.

11.    Hamblen County has a statutory and constitutional duty to maintain the Jail to secure the safe custody, health, and comfort of inmates housed therein. *See* Tenn. Code. Ann. §§ 5-7-104, 106.  Where the jail is found to be unhealthy or insecure, the County Legislative body can cause to be erected a new jail to secure the safe custody of its inmates.

- 4 -

Tenn. Code. Ann. § 5-7-11. Hamblen County is also required to provide to the Jail sufficient medical personnel as needed to provide timely and appropriate medical services to those persons confined who require such services at the sole expense of Hamblen County. Tenn. Code. Ann. § 41-4-115.

12.     To discharge its statutory and constitutional obligations regarding medical care, Hamblen County contracted with a third-party medical provider, CorrectHealth Hamblen, LLC, for medical services for inmates at the Hamblen County Jail. These medical services are provided by nursing staff and a supervising physician. CorrectHealth is a Tennessee foreign limited liability corporation doing business in Hamblen County, Tennessee, with its principal place of business being 9020 Peridot Parkway, Stockbridge, Georgia 30281 and a Registered Agent as CT Corporation, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710.

## STATEMENT OF FACTS

13.     Plaintiff was booked into the Hamblen County Jail on or about July 10, 2018. Plaintiff advised the Defendant Jail Officers and other officers at the Jail that he (Plaintiff) was an informant and if placed in a pod/cell in the West Block, that Plaintiff would be injured by the other inmates.

14.     On July 15, 2018, Plaintiff was forced into West Block. The Defendant Jail Officers told the Plaintiff that—notwithstanding his status as an informant and concerns regarding inmate-on-inmate violence—he would remain in West Block.

15.     Shortly after being forced onto West Block, which was overcrowded with inmates known to all Defendants to be violent (and whom knew or learned of Plaintiff's status as an informant), Plaintiff was brutally attacked and mercilessly and savagely beaten

by seven inmates. Five of these inmates are known to Plaintiff — Michael Harvey, Marty Harvey, Brandon Lawson, Harley Humphrey, and Michael Turner.

16.     This assault caused Plaintiff to suffer serious facial trauma, rib and abdominal pain. Plaintiff was taken to Lakeway Hospital, where, following a CT scan, he was diagnosed with laceration of the spleen, along with serious contusions to his head and midsection. On July 16, Plaintiff was transferred to UT Hospital where he was diagnosed with a grade 3 spleen laceration; he was observed for two days and discharged back to the Jail.

17.     Soon after his return to the Hamblen County Jail, Plaintiff continued to experience pain in his abdomen. Plaintiff reported this ongoing and increasingly severe pain to Jail officials and/or CorrectHealth nursing staff; despite his recent hospitalization and severe pain, however, he was not seen by a qualified medical doctor and/or taken to the hospital in a timely manner.

18.     Finally, on July 21, 2018, Plaintiff was taken to Morristown Hamblen Hospital due to severe abdominal pain, profuse sweating, and a pulsating mass in the abdomen. He was given a blood transfusion and, once stable, transferred back to UT Medical via EMS. Upon arrival, Plaintiff's blood pressure dropped, and he was immediately taken to surgery. During surgery, Plaintiff was found to have a grade 5 spleen laceration with a large volume of blood in his peritoneal cavity; he found be in hemorrhagic shock. Subsequently, Plaintiff's spleen was removed. Plaintiff was discharged from UT on July 24, 2018 and later presented at Lakeway Regional Hospital for follow-up appointments and additional pain. Plaintiff has incurred more than $ 95,741.70 in medical bills stemming from the assault.

19.     The severe overcrowding and understaffing at Hamblen County Jail had resulted in numerous documented inmate-on-inmate assaults every year for the previous five years to this incident. For example, in 2017, the Jail was designed to hold 255 inmates — and yet, Jail records reveal that the average daily inmate population from March 1, 2017 through August 18, 2017 was 392 inmates. Just a few weeks following Plaintiff's assault, Sherriff Jarnagin reported that the Jail had "in recent weeks ... housed near 500 inmates."[1]

20.     Due to the overcrowding and understaffing, at the time of Plaintiff's assault, inmates were not being properly monitored or supervised as required and security checks on inmates were not being performed in accordance with a specific policy implemented at the Hamblen County Jail by Defendants Hamblen County, Jarnigan and Laws. The situation in the Jail in July 2018 was no better than what existed in March 2015, when Wayne Mize, chief deputy for the Hamblen County Sherriff's Department, reported that inmate-on-inmate violence was "an every-day occurrence." Understaffing at the jail was such that, should a fight break out, there was no one to respond. "You're down to zero," Mize reported. "If a jailer in a control room sees something going on, he or she can't move. Ten [jail officers] sounds like a lot. When you get into operations, it's not a lot."[2] These statements made by Chief Deputy Mize of the Hamblen County Sheriff's Department in the course and scope of his employment as the spokesperson designated by Hamblen County to speak on the record to Robert Moore, Staff Writer for the *Citizens Tribune* acknowledged

---

[1] Hamblen County Sherriff Goes Public with Jail Overcrowding Concerns, WATE 6 (Aug. 10, 2018), https://www.wate.com/news/local-news/hamblen-county-sheriff-goes-public-with-jail-overcrowding-concerns/ (last accessed July 14, 2019).

[2] Hamblen County Sheriff's Office Official Facebook Page (March 10, 2015), *available at* https://www.facebook.com/HamblenCountySheriffsOffice/posts/1555797171375418 (last accessed July 14, 2019) (part of a two-part series on overcrowding at the Jail).

- 7 -

that the understaffing at the Jail meant that inmates could not be properly supervised so as to prevent the type of harm suffered by Plaintiff.

21.     Hamblen County had been warned by Jim Hart, an jail expert and consultant with the Tennessee County Technical Assistance Service that the lack of proper inmate classification and housing based on that classification created liability exposure for the County for its "failure to protect" inmates in its custody. *See* John I. Carney, SHELBYVILLE TIMES-GAZETTE, *New Jail Urged: Current Facility Cannot Be Rehabbed, Expert Says* (July 16, 2016), *available at* https://www.t-g.com/story/2213862.html (last accessed July 14, 2019).

22.     Hamblen County's Chief Deputy, Wayne Mize, warned in 2015 that the failure to rectify the overcrowding would someday "cost everyone if there's a lawsuit." As *Citizens Tribune* Staff Writer Robert Moore reported: "[t]hose who have no qualms about housing inmates like canned sardines, Mize says, may be more attuned to the bottom line — the liability all Hamblen County taxpayers will share if the chronic overcrowding sufficiently offends the sensibilities of a federal judge and he orders new construction on his terms. 'It's going to cost everyone if there's a lawsuit[.]"[3] In a more recent news article, published five months prior to Plaintiff's assault, Moore reported on an incident in which three Hamblen County Jail inmates—including a homicide suspect—brutally assaulted a fellow inmate in the Jail on a violation of probation charge.[4]  Noting that the victim's medical bills would likely be paid for by the County, Lieutenant Frank Lane, who manages jail operations,

---

[3] *See id.*

[4] Robert Moore, *Trio Charged, Inmate Hospitalized After Jailhouse Beating*, THE CITIZEN TRIBUNE (Feb 9, 2018), *available at* https://www.citizentribune.com/news/local/trio-charged-inmate-hospitalized-after-jailhouse-beating/article_8eafa342-0db7-11e8-adf2f7eb04e0cbb3.html

reportedly stated "It's an outrageous expenses **and it comes from the overcrowding** . . . when you're overcrowded like we are, tensions are high[.]" *Id*.

23.     This failure to remedy the overcrowding and the understaffing at the Hamblen County Jail is so long-standing and well known as to constitute actual policy or custom on the part of Defendants Hamblen County, Jarnigan and Laws; by their own admission, the overcrowding and understaffing is directly responsible for the inmate on inmate violence. Indeed the 2017 TCI inspection report pointed to the overcrowding and understaffing as the cause for the failure to perform the functions and duties that were required in order to maintain inmate safety and security in the Jail facility.

24.     The deputies assigned to the Jail were routinely failing to conduct criminal background checks so that they would know how to classify and house inmates coming into the Jail due to the understaffing that existed in 2018.

25.     Upon information and belief, Defendant CorrectHealth, Inc., has a policy or practice of prioritizing cost-cutting measures at the expense of providing adequate and timely medical care to Jail inmates. For example, CorrectHealth's sales and marketing materials focus on lowering costs and "minimizing inmate movement" over breadth and quality of care. And upon information and belief, the physician employed by CorrectHealth to provide medical care to persons confined at the Hamblen County Jail and oversee the care provided by nursing staff, lives and works out of state and provides these services remotely.

26.     Hamblen County knew—or should have known—based upon prior inmate complaints and lawsuits that Correct Health, LLC, and its employees were providing constitutionally inadequate and delayed medical care. *See*, *e.g.*, *Carson v. Hamblen*

*County, et al.*, No. 2:15-cv-337 (E.D. Tenn.). Yet the County continued to retain CorrectHealth for these services, in deliberate indifference to the risk of further delays and inadequate care to other inmates.

<u>**CLAIMS UNDER THE U.S. CONSTITUTION**</u>
<u>**AND 42 U.S.C. § 1983**</u>

**COUNT I**
**FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE**
*AGAINST SHERRIFF JARNIGAN*

27.    Plaintiff re-alleges paragraphs 1-26, inclusive.

28.    Plaintiff had a constitutional right under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution not to be subjected to assault and violence while housed as a pre-trial detainee at the Hamblen County Jail.

29.    Plaintiff also had a constitutional right to be provided with access to adequate medical care for injuries that were obvious and serious enough to require the attention of medical personnel.

30.    Sheriff Jarnigan and the County were on notice that the chronic, persistent overcrowding at the Jail prevented persons confined, whether serving sentences or pre-trial detainees, from being appropriately classified and housed according to their potential dangerousness to other persons confined in the Jail.

31.    Defendant Jarnigan had the duty and requisite authority to impose a classification system for inmates at the Hamblen County Jail. T.C.A. § 41-4-103.

32.    Because of the overcrowding, Defendant Jarnigan had no established policy that would prevent violent predators from being housed with less-violent inmates and/or inmates presenting with risk factors for assault, such as status as an informant, who would unable to defend themselves against assaults by violent inmates (including brutal assaults

where the victim is outnumbered seven to one). Furthermore, Jarnigan failed to maintain a sufficient number of persons to work at the Hamblen County Jail so as to be able to supervise and protect inmates from violence by other inmates.

33.     Defendant Jarnigan knew that these violent predatory inmates posed an immediate threat to new inmates placed in the cell with them.

34.     Plaintiff had a constitutional right not to be assaulted and beaten while in the custody at the Hamblen County Jail. This right was firmly established and well known by Defendants prior to the assault on the Plaintiff. Defendants had a duty to take reasonable measures to ensure Plaintiff's physical safety while he was in custody, including safety from violence visited upon him by other inmates.

35.     Plaintiff had warned that he was an informant, or in the alternative, Jail Officers were aware that he was an informant, and that there would be violence if Plaintiff was placed in a cell / pod in West Block with violent inmates who knew or might learn of his status as an informant.

36.     Defendant Jarnigan's ignored the substantial risk of physical injury to Plaintiff and/or created a substantial risk of harm to Plaintiff by implementing, tolerating, or ratifying certain policies and/or customs that deprived Plaintiff of his constitutional right to be free from physical assault while confined to the Hamblen County Jail, including but not limited to:

    a.     Accepting prisoners to be housed despite having no room in the Jail to place them;

    b.     Failing to take measures at his disposal to reduce the inmate population at the Hamblen County Jail;

c.      Despite knowing of the dangers of overcrowding, Defendant Jarnigan failed to even attempt to implement a classification system so as to house known violent inmates separate and apart from non-violent inmates and inmates presenting with risk factors for assault, such as status as an informant;

d.      Failing to staff the County Jail with sufficient deputies, jailers, and/or corrections officers so that inmates could be properly classified at the time they were booked into the Jail and housed accordingly; and

e.      Failure to provide injured inmates with access to timely and appropriate medical care; specifically, failure to take measures at his disposal to encourage and/or ensure that County officials replaced CorrectHealth LLC with an adequate third-party medical provider.

37.      Sherriff Jarnigan's deprivation of the Plaintiff's basic constitutional rights resulted in serious injury to Plaintiff, including contusions and trauma to Plaintiff's head, face and body, internal injuries to his abdomen causing bleeding, hemorrhagic shock, and a lacerated spleen requiring surgery and removal. The delay in providing medical care caused Plaintiff's injuries to be more serious than they otherwise would have been. Plaintiff's severe pain and injuries are continuing, have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against Defendant Jarnigan in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys' fees under 42 U.S.C. § 1988.

- 12 -

## COUNT II

## FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
*AGAINST THERESA LAWS*

38.     Plaintiff re-alleges paragraphs 1-26, inclusive.

39.     Plaintiff had a constitutional right under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution not to be subjected to assault and violence while housed as a pre-trial detainee at the Hamblen County Jail.

40.     Plaintiff also had a constitutional right to be provided access to adequate medical care for injuries that were obvious and serious enough to require the attention of medical personnel.

41.     Defendant Theresa Laws was on notice that the chronic, persistent overcrowding at the Jail prevented persons confined, whether serving sentences or pre-trial detainees, from being properly classified and housed according to their potential dangerousness to other persons confined and/or to persons working in the Jail. Laws was further on notice by virtue of the prior incidents of inmate-on- inmate violence and Plaintiff's warning at the time he was booked that he was an informant and if placed in the West Block there would be violence against him.

42.     Notwithstanding that knowledge, Defendant Laws made no changes to the County Jail policies to require that inmates who advise the booking officers that there are particular inmates or housing placements that will result in harm to the inmate be placed in a different pod/cell/block, or that non-violent inmates and inmates posing certain risk factors for violence, such as status as an informant, not be placed in the same pod/cell/block as violent inmates.

- 13 -

43.     Because of the overcrowding, Defendant Laws had no policy that would prevent these violent predators from being housed with less-violent inmates or inmates perceived as "weaker" or at risk of assault by virtue of their status as an informant and unable to defend themselves against assaults by predatory inmates.

44.     Defendant Laws knew that these inmates posed an immediate threat to new non-violent inmates such as Plaintiff placed in the cell with them and yet ignored the substantial risk of physical injury to Plaintiff, or created a substantial risk of harm to Plaintiff by implementing, tolerating, or ratifying policies and/or customs that deprived Plaintiff of his constitutional right to be free from physical assault while confined to the Hamblen County Jail, including but not limited to:

    a.     Accepting prisoners to be housed despite having no room in the Jail to place them;

    b.     Failing to take measures at her disposal to reduce the inmate population at the Hamblen County Jail;

    c.     Despite knowing of the dangers of overcrowding, Defendant Laws failed to even attempt to implement a classification system so as to house known violent inmates separate and apart from non-violent inmates and inmates presenting with risk factors for violence, such as status as an informant;

    d.     Failing to staff the County Jail with sufficient deputies, jailers, and/or corrections officers so that inmates could be properly classified at the time they were booked into the Jail and housed accordingly; and

    e.     Failure to provide injured inmates with access to timely and appropriate medical care; specifically, failure to take measures at her disposal to encourage

- 14 -

and/or ensure that County officials replaced CorrectHealth LLC with an adequate third-party medical provider.

45.     Defendant Laws' deprivation of Plaintiff's basic constitutional rights resulted in serious injury to Plaintiff, including contusions and trauma to Plaintiff's head, face and body, internal injuries to his abdomen causing bleeding, shock, and a lacerated spleen requiring surgery and removal. The delay in providing medical care caused Plaintiff's injuries to be more serious than they otherwise would have been. Plaintiff's pain and injuries are continuing, have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against Defendant Laws in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT III
## FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
### *AGAINST HAMBLEN COUNTY*

46.     Plaintiff re-alleges paragraphs 1-26, inclusive.

47.     Defendant Hamblen County knew for years that the persistent and chronic overcrowding at the County Jail prevented proper classification of persons confined to the Jail as to their dangerousness to other persons confined. The lack of a proper classification system prevented non-violent inmates from being placed separate and apart from violent inmates and inmates presenting risk factors for assault such as status as an informant, thereby increasing the risk of physical harm to these inmates. Not only was the County notified by the Tennessee Corrections Institute that the Jail failed to meet the minimum

requirements set forth by the TCI which included the ability to classify inmates as to their level of dangerousness, it was also notified by numerous lawsuits and respected experts which pointed to the overcrowding and understaffing as creating an environment in which persons housed in the County Jail were being harmed by other inmates. Notwithstanding this notice, Hamblen County took no concrete steps, other than to spend money for "jail studies" over the years and create a committee to "study" the problem when everyone knew what the problem was: too many inmates for the size of the facility and too few personnel to guard them.

48.     Hamblen County knew for years that the failure to properly staff the overcrowded Jail prevented there being sufficient jail staff to be able to intervene to either prevent or mitigate an assault by one or more inmates on another. The Jail staff was simply spread too thin by the refusal of the County to fund sufficient staff to be able to monitor and protect the number of persons confined that the County permitted the Sheriff to accept into the Hamblen County Jail.

49.     Defendant Hamblen County has known prior to this incident that the overcrowding and understaffing at the Jail is directly responsible for injuries to inmates, and yet Hamblen County did nothing to either alleviate the overcrowding or sufficiently fund new positions for the Hamblen County Jail staff to enable the staff to prevent and/or intervene when a person confined is being assaulted.

50.     By failing and refusing to fund a new Jail for over a decade and failing and refusing to provide the Sheriff's Department with sufficient funds to pay the deputies/jailers/corrections officers a true living wage and to attract and retain qualified professionals to work at the Jail, Hamblen County ensured that the Jail would remain over-

crowded and understaffed. This persistent refusal and failure rose to the level of a policy decision and/or custom and practice to allow the constitutional violations at the Hamblen County Jail to exist and to continue.

51.     Furthermore, Hamblen County's unofficial policy of not providing inmates with timely and adequate access to medical care in order to save money constituted a violation of Plaintiff's constitutional rights. Upon information and belief, the County had a policy of delaying medical care in the hopes that inmates would be let out on bond or serve their sentences before obtaining much-needed treatment, so the County would not be "on the hook" for their medical bulls. *See*, *e.g.*, *Sexton v. Hamblen County*, No. 18-cv-00048 (E.D. Tenn.) (alleging that jail officials refused to allow inmate access to medical care following a brutal beating; when the inmate's family saw his condition after he was released on bond, he was taken to the hospital and treated for a severe facial fracture). In yet another effort to prioritize budgetary concerns over inmate health and safety, the County retained and continued to utilize CorrectHealth, LLC as the Jail's medical provider despite knowing CorrectHealth provided delayed and inadequate medical care to inmates.

52.     This deprivation of Plaintiff's constitutional rights was under color of law and constituted a custom, practice, policy or procedure for the denial of the rights of inmates, including the Plaintiff.

53.     Due to these constitutional violations, Plaintiff was savagely beaten and denied timely access to appropriate medical care. He suffered contusions and trauma to Plaintiff's head, face and body, internal injuries to his abdomen causing bleeding, shock, and a lacerated spleen requiring surgery and removal. The delay in providing medical care caused Plaintiff's injuries to be more serious than they otherwise would have been.

Plaintiff's pain and injuries are continuing and cause him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against Hamblen County in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest and reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT IV
### DENIAL OF MEDICAL CARE
*AGAINST CORRECTHEALTH HAMBLEN LLC*

54.     Plaintiff re-alleges paragraphs 1-26, inclusive.

55.     Defendant CorrectHealth Hamblen LLC contracted with Hamblen County to provide medical care and services to persons confined at the County Jail. Those services are required to be provided by the County and the Sherriff pursuant to the Tennessee Constitution, Tennessee Statutes, and the U.S. Constitution and are non-delegable. As a private entity providing medical services to state inmates, CorrectHealth is a state actor for the purposes of 42 U.S.C. § 1983. CorrectHealth was aware of its constitutionally-protected duty to provide adequate medical care.

56.     Upon information and belief, under the terms of its contract with the County and/or pursuant to its business model, the greater the amount of time and attention CorrectHealth and its agents devote to the medical needs of a particular prisoner, the greater the resulting expense and/or opportunity cost, thus adversely affecting CorrectHealth's profits. As a result, CorrectHealth had a *de facto* policy of providing the bare minimum of staffing and medical care to those inmates at the Hamblen County Jail; to maximize its profits, CorrectHealth utilized remote-based doctors and failed, or refused, to invest the

time or effort required to acknowledge, examine, diagnose and treat these Jail inmates with respect to potentially serious medical problems and concerns. Further, upon information and belief, Hamblen County officials encouraged CorrectHealth to delay referring inmates for outside medical treatment in the hopes that inmates would be let out on bond or serve out their sentences before obtaining much-needed treatment, so the County would not be "on the hook" for their medical bulls.

57.    The foreseeable result of this *de facto* policy was that inmates at the Hamblen County Jail would be harmed and/or received delayed medical care. For Plaintiff, this meant a delay in his being taken to back to the hospital after his initial discharge on July 18, 2018. CorrectHealth's failure, or refusal, to acknowledge, examine, and provide adequate medical care to inmates like Plaintiff in a timely and adequate manner constitutes deliberate indifference to serious medical needs.

58.    As a direct and proximate result of CorrectHealth's *de facto* policy of ignoring serious health concerns raised by Jail inmates, and its failure to provide timely medical care to Plaintiff, Plaintiff's pain and injuries were more severe than they would have otherwise been. Plaintiff's pain and injuries are continuing, have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against CorrectHealth in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT V

### FAILURE TO PROTECT
*AGAINST JAIL OFFICER BRADLEY [LAST NAME UNKNOWN]*
*AND THE UNKNOWN JAIL OFFICER*

59.    Plaintiff re-alleges paragraphs 26, inclusive.

60. Plaintiff specifically advised the Defendant Jail Officers whose full names are presently unknown but will be obtained in discovery and substituted for the description of this particular Defendant, that if they assigned Plaintiff to West Block he would be in danger of harm from the other inmates. These Officers were acting under color of law in their interactions with Plaintiff.

61. Notwithstanding that specific information about the imminent risk of harm to Plaintiff, the Defendant Jail Officers placed Plaintiff in that area of the Jail. This conduct evinces a deliberate disregard for the constitutional rights of the Plaintiff to be free from violence while incarcerated at the Hamblen County Jail as a pre-trial detainee.

62. As Plaintiff had advised, he was indeed jumped by seven violent inmates in his cell/pod and beaten savagely upon being placed with those inmates.

63. As a result of this brutal beating, Plaintiff suffered physical injuries that required hospitalization and surgery to repair and caused Plaintiff great pain and suffering from those injuries. Plaintiff's injuries were permanent and/or are continuing in nature and have affected Plaintiff's capacity for the enjoyment of life.

64. Defendant's actions were so depraved and intentional as to give rise to the entitlement to punitive damages.

**WHEREFORE** Plaintiff demands Judgment against the Jail Officers in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, reasonable attorneys' fees under 42 U.S.C. § 1988, and punitive damages in the amount of two million dollars and no cents (2,000,000.00) against these Defendants.

## COUNT VI

## FAILURE TO PROTECT – RATIFICATION
### *BY HAMBLEN COUNTY, JARNIGAN AND LAWS*

65.     Plaintiff re-alleges paragraphs 1-26, inclusive.

66.     Defendants were aware of the prior incidents, and this one, and yet made no investigation into the conduct by the Jail Officers who unnecessarily placed Plaintiff in danger, imposed no discipline, or otherwise changed any policies and procedures to prevent a similar incident in the future. Because of that Plaintiff was injured.

67.     Despite the fact that Hamblen County, Jarnigan and Laws knew that the brutal attack on Plaintiff was spurred by his status as an informant, and that he was denied timely access to appropriate medical care, these Defendants made no investigation into the Defendant Jail Officers' role in the assault, the failures by CorrectHealth employees to provide timely care, and/or the Jail policies in place that allowed this incident to occur.

68.     Having failed to investigate, discipline the Jail Officers involved in this assault and prior assaults, and/or change the policies in place at the Jail to correct the unconstitutional conduct prior to Plaintiff's incarceration, and/or take action to replace CorrectHealth as the Jail's medical provider, Defendants ratified the conduct, which resulted in Plaintiff's injuries set forth more fully above.

**WHEREFORE** Plaintiff demands judgment against Defendants Hamblen County, Jarnigan and Laws in the amount of one million dollars and no cents (1,000,000.00), costs of this action, pre-judgment and post-judgment interest, and reasonable attorneys' fees under 42 U.S.C. § 1988.

## CLAIMS UNDER THE LAWS OF TENNESSEE

## COUNT VII

### NEGLIGENCE / GROSS NEGLIGENCE
*AGAINST JARNIGAN AND LAWS*

69.     Plaintiff re-alleges paragraphs 1-26, inclusive.

70.     It was the statutory duty, and Defendants Jarnigan and Laws had the requisite authority, to protect persons confined to the Hamblen County Jail.

71.     Jarnigan and Laws were on notice that chronic overcrowding at the Jail prevented persons confined, whether serving sentences or pre-trial detainees, from being classified and housed according to their potential dangerousness to other persons confined. These Defendants was further on notice by virtue of the prior incidents of inmate on inmate violence and Plaintiff's warning at the time he was booked that he was an informant and that if he was placed in that particular pod/cell/block of the Jail there would be violence against him.

Notwithstanding that knowledge, these Defendants made no changes to the Jail policies to require that inmates who advise the booking officers that there are particular inmates or placements that will result in harm to the inmate be placed in a different pod/cell/block or that non-violent inmates not be placed in the same pod/cell/block as violent inmates.

72.     Because of the overcrowding, Jarnigan and Laws had no policy that would prevent violent predators from being housed with less-violent inmates, inmates who were perceived as "weaker," and/or inmates at risk of brutal assault by virtue of their status as informants.

73.     Jarnigan and Laws knew that these inmates posed an immediate threat to inmates such as Plaintiff placed in the cell with them. Defendant Laws had the ability to

- 22 -

change Plaintiff's cell assignment to place him beyond the reach of his attackers and yet failed to do so even when Plaintiff voiced his fears at the time of booking and pod/cell assignment.

74.     As a result of Jarnigan and Laws' failure to reduce the overcrowded conditions that existed at the Hamblen County Jail, Plaintiff was put in jeopardy by being housed with criminally violent inmates who had already been known to be attacking other non-violent inmates placed in the cell/pod with them.

75.     Plaintiff's fears he voiced about being identified as an informant and locked in a cell/pod with these other violent inmates put Defendants Jarnigan and Laws on notice that Plaintiff was at imminent risk for injury.

76.     By acting and failing to act as described above, Defendants Jarnigan and Laws breached their duty to protect inmates such as Plaintiff, and/or acted in reckless disregard of the foreseeable risk that he would be assaulted.

77.     Jarnigan and Laws' negligence caused physical and emotional injury to Plaintiff, pain and suffering and resulted in his hospitalization and need for surgery to repair the damaged cause by the brutal beating Plaintiff suffered at the hands of his violent cellmates. Plaintiff's pain and injuries are continuing, have impaired his relationships and caused him to suffer the loss of the capacity for enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against Defendants Jarnigan and Laws in the amount of seven hundred fifty thousand dollars ($750,000.00), costs of this action, pre- and post-judgment interest. Defendant Jarnigan is civilly responsible for Theresa Laws' acts and failures to act in the performance of her duties at the Jail by virtue of her appointment by Defendant Jarnigan to fulfill his statutory duties to the inmates.

## COUNT VIII

### NEGLIGENCE / GROSS NEGLIGENCE
*AGAINST DEFENDANT JAIL OFFICERS*

78.     Plaintiff re-alleges paragraphs 1-26, inclusive.

79.     Upon learning of Plaintiff's status as an informant and his concerns that he would be brutally assaulted by other inmates if placed in the West Block, the Defendant Jail Officers had a duty to protect Plaintiff from harm and assault.

80.     In failing to either report the Plaintiff's concerns or otherwise ensure that Plaintiff received a different housing assignment, the Defendant Jail Officers breached this duty and/or acted in conscious or reckless disregard of the foreseeable risk that Plaintiff would be assaulted and seriously injured.

81.     These Jail Officers' negligence caused physical and emotional injury to Plaintiff, pain and suffering and resulted in his hospitalization and need for surgery to repair the damaged cause by the brutal beating Plaintiff suffered at the hands of his violent cellmates. Plaintiff's pain and injuries are continuing, have impaired his relationships and caused him to suffer the loss of the capacity for enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against the Defendant Jail Officers in the amount of seven hundred fifty thousand dollars ($750,000.00), costs of this action, pre- and post-judgment interest.

## COUNT IX

### NEGLIGENCE / GROSS NEGLIGENCE
*AGAINST HAMBLEN COUNTY*

82.     Plaintiff re-alleges paragraphs 1-26, inclusive.

- 24 -

83.     Defendant Hamblen County knew for years that the persistent and chronic overcrowding at the Jail prevented a proper classification of persons confined to the Jail as to their dangerousness to other persons confined. The lack of a proper classification system prevented non-violent inmates from being placed separate and apart from violent inmates, thereby increasing the risk of physical harm to the non-violent inmates. Not only was Hamblen County notified by the Tennessee Corrections Institute that the Hamblen County Jail had failed to meet the minimum requirements set forth by the TCI which included the ability to classify inmates as to their level of dangerousness, it was also notified by numerous lawsuits which pointed to the overcrowding and understaffing as creating an environment in which persons housed in the Jail were being harmed by other inmates. Notwithstanding this notice, Hamblen County took no concrete steps, other than to spend money for "jail studies" over the years and create a committee to "study" the problem when everyone knew what the problem was: too many inmates for the size of the facility and too few personnel to guard them.

84.     Hamblen County knew for years that the failure to properly staff the overcrowded Jail prevented there being sufficient jail staff to be able to intervene to either prevent or mitigate an assault by one or more inmates on another. The Jail staff was simply spread too thin by the refusal of the County to fund sufficient staff to be able to monitor and protect the number of persons confined that the County permitted the Sheriff to accept into the Hamblen County Jail.

85.     Defendant Hamblen County has known prior to this incident that the overcrowding and understaffing at the Jail is directly responsible for injuries to inmates, and yet Hamblen County did nothing to either alleviate the overcrowding or sufficiently

fund new positions for the Hamblen County Jail staff to enable the staff to prevent and/or intervene when a person confined is being assaulted.

86. Pursuant to T.C.A. § 29-20-205, Hamblen County has waived its immunity for the negligence of County employees and therefore Hamblen County is directly liable for the negligence of the Jail staff to the extent that their conduct constitutes negligence.

87. Pursuant to T.C.A. § 8-8-302, Hamblen County has waived its immunity for the non-negligence of deputies, including, Defendant Teresa Laws, and therefore Hamblen County is directly liable for the non-negligent conduct of the Jail staff, and Defendant Teresa Laws.

88. Defendants Hamblen County, Defendant Laws, and the Jail Officers' negligence caused physical and emotional injury to Plaintiff, pain and suffering and resulted in his hospitalization and the need for surgery. Plaintiff's injuries are continuing and have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against Defendant Hamblen County in the amount of seven hundred fifty thousand dollars ($750,000.00), costs of this action, pre-judgment and post-judgment interest.

## COUNT X

### NEGLIGENCE

*AGAINST CORRECTHEALTH HAMBLEN LLC*

89. Plaintiff re-alleges paragraphs 1-26, inclusive.

90. Defendant CorrectHealth had a statutory duty to provide to Plaintiff timely and appropriate medical care, by virtue of duties delegated to it pursuant to its contract with Hamblen County. *See* Tenn. Code. Ann. § 41-4-115.

91. Following his initial discharge from the hospital on or about July 18, 2018, the Plaintiff complained to CorrectHealth nursing staff of severe pain in his abdomen. Despite this notice and knowledge of Plaintiff's recent hospitalization for a lacerated spleen, among other injuries, CorrectHealth, through its employees failed to timely and appropriately examine, diagnose and and refer Plaintiff for further medical care. The actions and failures to act by CorrectHealth employees described above breached the duty owed to Plaintiff and ignored the foreseeable risk that he would be harmed by a delay in care.

92. As a result of this delay in obtaining medical care, Plaintiff was not taken back to the hospital until July 21, 2018, and his injuries were greater than they would have otherwise been.

**WHEREFORE** Plaintiff demands Judgment against CorrectHealth in the amount of seven hundred fifty thousand dollars ($750,000.00), costs of this action, pre-judgment and post-judgment interest.

## COUNT XI

### ASSAULT AND BATTERY

*AGAINST DEFENDANTS MICHAEL AND MARTY HARVEY, BRANDON LAWSON, HARLEY HUMPHREY, AND MICHAEL TURNER*

93. Plaintiff re-alleges paragraphs 1-26, inclusive.

94. On July 15, 2018, these Defendants brutally assaulted the Plaintiff by kicking and beating Plaintiff about the head, chest and back with an unidentified blunt object. These Defendants intended to and did harm Plaintiff and cause him to fear for his life.

95.     The assault and battery upon Plaintiff's person by these Defendants rights resulted in serious injury, including contusions and trauma to his head, face and body, internal injuries to his abdomen causing bleeding, hemorrhagic shock, and a lacerated spleen requiring surgery and removal. Plaintiff's severe pain and injuries are continuing, have impaired his relationships and caused him to suffer the loss of the capacity for the enjoyment of life.

**WHEREFORE** Plaintiff demands Judgment against these Defendants in the amount of seven hundred fifty thousand dollars ($750,000.00), costs of this action, pre-judgment and post-judgment interest.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury pursuant to his Constitutional right to a trial by jury and Federal Rule 38 (b), Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED**, this the **15**th day of **July**, 2019.

THE BOWLIN LAW FIRM P.C.

BY: _____ *for the Firm*
Troy L. Bowlin, II, Esq. N0. 025893
Attorney for David Brock
First Tennessee Plaza
800 South Gay St. Suite 2131
Knoxville, TN 37929
troy@tblf-pc.com
www.bowlinlawfirmpc.com

- 28 -